1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                     AT TACOMA

10

11    ALAN JOHNSON and STACEY            CASE NO. 14-5607 RJB
      URNER, individually and as husband and
12    wife,                              ORDER ON MOTIONS FOR
                                         SUMMARY JUDGMENT
13                    Plaintiffs,

      v.
14
      JP MORGAN CHASE BANK N.A., a
15    foreign corporation, SELECT
      PORTFOLIO SERVICING INC., a
16    foreign corporation, and all persons
      claiming any interest in the property
17    described in the Deed of Trust or in the
      Obligation secured thereby, DOES 1-50,
18    inclusive,

19                    Defendants.

20
            This matter comes before the Court on Defendant JP Morgan Chase Bank N.A.'s
21
      ("Chase") Motion for Summary Judgment (Dkt. 72) and Defendant Select Portfolio Servicing,
22
      Inc.'s ("SPS") Motion for Summary Judgment (Dkt. 76). The Court has considered the
23
      pleadings filed in support of and in opposition to the motions and the file herein.
24

      ORDER ON MOTIONS FOR SUMMARY
      JUDGMENT- 1

1   This cases arises from a mortgage Plaintiffs took out on real property located in Gig

2   Harbor, Washington and their various attempts at getting a loan modification.  Dkts. 1.  For the

3   reasons set forth below, Chase's Motion for Summary Judgment (Dkt. 72) should be granted, in

4   part, and denied, in part and SPS's Motion for Summary Judgment (Dkt. 76) should be granted.

5   <h1 style="text-align:center">I.   <u>FACTS AND PROCEDURAL HISTORY</u></h1>

6   **A. FACTS**

7   In May of 2007, Plaintiff Johnson obtained an $848,000.00 refinance loan from

8   Washington Mutual Bank, F.A. ("WaMu") by executing a Note.  Dkt. 75-1.  The loan was

9   secured by a Deed of Trust on property located at 1426 Cascade Place Northwest, Gig Harbor,

10  WA 98332.  Dkt. 75-2. The Note provides that if the full amount of each monthly payment is not

11  made on the day it is due, then Plaintiff Johnson is in "default."  Dkt. 75-1.  The Deed of Trust

12  states that "[i]f the default is not cured . . ., Lender at its option may require immediate payment

13  in full of all sums secured by this Security Instrument without further demand and may invoke

14  the power of sale and/or any other remedies permitted by Applicable Law."  Dkt. 75-2.

15  The loan was securitized and sold to a trust, "WaMu Mortgage Pass-Through Certificates

16  Series 2007-OA6 Trust," WaMu was the Initial Custodian, and the servicer.  Dkt. 75-3.

17  **Defendant Chase**

18  In 2008 WaMu was placed in receivership and Defendant Chase acquired Plaintiff

19  Johnson's loan and the rights to service the loan.  Dkt. 75, at 3.  Although Chase executed an

20  Assignment of Deed of Trust on August 1, 2009. (transferring its beneficial interest to Bank of

21  America, N.A.) regarding this loan, it remained the servicer of the loan.  Dkt 75, at 3.

22  Starting in November of 2008, Plaintiffs started having difficulty in making payments

23  due to both of them losing their jobs, and in August of 2009 began applying for a loan

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 2

1  modification.  Dkt. 74-1, at 9.  From 2009-2012, Plaintiffs applied for a series of loan

2  modifications from Chase.   Dkts. 67-19 and 67-20.  These modifications were denied for a

3  variety of reasons including insufficient income and failure to provide documents, although

4  Plaintiffs repeatedly (more than 10 times) provided those documents.  *Id*.

5      The Third Amended Complaint asserts that on March 7, 2012 and on November 19,

6  2012, Plaintiffs sent a letters to Chase, entitled "Qualified Written Request."  Dkt. 67.  These

7  documents are attached to the Third Amended Complaint.  Dkt. 67-6.  The March 7, 2012 letter

8  makes requests for 45 different sets of documents.  *Id*.  Plaintiffs also attach another letter to

9  their Third Amended Complaint, also dated March 7, 2012 and addressed to Chase which uses

10 the phrase "qualified written request."  *Id*.  The November 19, 2012 letter was also attached.  *Id*.

11 No response was sent to any of these letters, and Plaintiffs continued to try to get a loan

12 modification.  *See Generally* Dkts. 67-19 and 67-20.

13     On July 26, 2012, a Notice of Default was issued by the successor trustee and former

14 defendant in this case, Quality Loan Services, Inc.  Dkt. 67-8.  Plaintiffs and Chase were referred

15 to Foreclosure Fairness Act ("FFA") mediation and participated in two sessions (in November

16 2012 and March 2013).  Dkt. 67-9.  After the second session, Chase told Plaintiffs that they

17 could receive a modification if they timely made three trial payments.  *Id*.  Plaintiffs made the

18 payments and Chase provided the final loan documents.  *Id*.  The terms in the final documents

19 were different than the terms agreed upon.  In July of 2013, the mediator issued a certificate

20 regarding the mediation.  *Id*.  She found that in the final loan documents the interest rates had

21 changed, there was no principal forgiveness and the balloon payment was different than what

22 Chase agree to in the mediation.  *Id*.  Accordingly she determined that "Chase, through its

23 underwriter induced the borrowers to take the trial modification with the underwriter's statements

24

1  and has engaged in a 'bait and switch' practice."  *Id.*  She concluded Chase had acted in bad

2  faith, and so certified as provided by RCW 61.24.163.  *Id.*

3  **Defendant SPS**

4       On August 1, 2013, Chase transferred servicing of the loan to Defendant SPS.  Dkt. 75, at

5  4.  SPS reported Plaintiffs as 180 days past due on their loan payments from April 2014 to

6  August 2014.  Dkt. 78. Plaintiffs' Third Amended Complaint alleges that "[i]nstead of

7  addressing the 'bait and switch' issues with the modification . . . SPS continued to negatively

8  report plaintiffs' credit to credit bureaus."  Dkt. 67.  Plaintiffs complain that SPS has been

9  reporting the debt with Chase.  Dkt. 67-19, at 11.  The credit reports to which Plaintiffs refer are

10  dated November 9, 2014 (Dkt. 67-2, at 7) and April – August 2014 (Dkt. 67-10).

11       In January of 2015, Plaintiffs received a loan modification through SPS.  Dkt. 74-1, at 11.

12  The first payment was due on February 1, 2015.  Dkt. 78-2, at 2.  Plaintiffs state that they are

13  pleased with their modification, even though they assert that the principal balance is higher in

14  this modification than in the modification they negotiated in March of 2013 with Chase at the

15  mediation.  Dkt. 74-1., at 13.

16       Plaintiffs assert in their Complaint that SPS received Plaintiff's first payment under the

17  modification on February 5, 2015, but failed to post the payment until February 24, 2015.  Dkt.

18  67, at 14.  The Third Amended Complaint alleges that SPS's statements do not match when the

19  payments are received, and that SPS is not correctly applying payments in accord with the Deed

20  of Trust.  *Id.*  They refer to their March and April statements, which are also attached to the

21  Third Amended Complaint (Dkts. 67-13 and 67-14).

22       SPS states that when it receives payment on a loan that is in litigation, it holds the

23  payment, reviews the payment and file, and then credits the payments.  Dkt. 78.  SPS has not

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 4

1   charged Plaintiffs any interest, late fees or any other charges in connection with these payments.

2   Dkt. 78, at 3.  SPS suspended all credit reporting with respect to the Plaintiffs from January 2015

3   to March of 2015.  Dkt. 78, at 3.  SPS has reported the loan as current since March of 2015.  Dkt.

4   78, at 3.  Plaintiffs' May and June 2015 account statements show payments applied and no fees

5   charged.  Dkts. 78-3, at 2-4 and 78-4 at 2-4.

6         The Third Amended Complaint argues that in delaying crediting Plaintiffs' timely

7   payments "and falsely maintain a delinquency as 'Past Due 180 Days' even after modification of

8   the loan, SPS predestines the modification's deferred balance forgiveness clause to fail rendering

9   the stated principal forgiveness impossible to achieve."  *Id.*  The credit reports attached to the

10  Third Amended Complaint, however, are dated before the modification, November 9, 2014 (Dkt.

11  67-2) and April – July of 2014 (Dkt. 67-10).

12        Plaintiffs sent SPS a letter referenced as a "Qualified Written Request" on April 24, 2015.

13  SPS sent an acknowledgement on April 29, 2015 and a response on May 11, 2015.  Dkts. 78-5,

14  at 2-3; and 78-6 at 2-3.

15        **B.  PROCEDURAL HISTORY**

16        This case was originally filed on July 28, 2014.  Dkt. 1.  On October 30, 2014, the claims

17  asserted against Quality Loan Services Corp. of Washington were dismissed.  Dkt. 33.   Plaintiffs

18  filed their Second Amended Complaint on March 6, 2015 (Dkt. 54) and their Third Amended

19  Complaint on June 18, 2015 (Dkt 67).

20        Plaintiffs make claims against Defendants Chase and SPS for: 1) the breach of the

21  implied duty of good faith and fair dealing, 2) negligence and wrongful foreclosure, 3) violation

22  of the Washington Consumer Protection Act, RCW 19.86, *et. seq*., 4) violation of the

23  Washington Collection Agency Act, RCW 19.16.250, *et. seq*., 5) violation of the Washington

24

1 | Consumer Loan Act, RCW 31.04, *et. seq.*, 6) violation of the Washington Lending and

2 | Homeownership Act, RCW 19.144.080, 7) violation of the Real Estate Settlement Procedures

3 | Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, 8) violation of the Truth-in-Lending Act ("TILA"),

4 | 12 U.S.C. § 1635, *et seq.*, and 9) violation of the Equal Credit Opportunity Act ("ECOA"), 15

5 | U.S.C. § 1691, *et seq.* Dkt. 61-1. Plaintiffs seek damages, costs, attorneys' fees and other

6 | statutory relief. Dkt. 61-1.

7 |      Trial is set to begin on September 28, 2015.  Dkt. 53.

8 | **C.  PENDING MOTIONS**

9 |      Chase moves for summary dismissal of the claims asserted against it, arguing that

10 | Plaintiffs' state law claims (claims 1-6 in the Third Amended Complaint) are preempted by the

11 | Home Owners' Loan Act, 12 U.S.C. § 1461-1470, ("HOLA"), and so should be dismissed.

12 | Dkts. 72 and 80.  It also argues that, on the merits, each of the state law claims should be

13 | dismissed:  1) Plaintiffs' claim for the breach of the implied duty of good faith and fair dealing

14 | should be dismissed because their claim is barred by the statute of limitations and Plaintiffs

15 | cannot point to contract provision which Chase breached, causing them damage; 2) Plaintiffs'

16 | claim for negligence and wrongful foreclosure should be dismissed because Chase did not owe

17 | them a duty of care, nor can they show proximate cause or damages, and there is no cause of

18 | action for wrongful foreclosure if the foreclosure sale has not been completed, 3) Plaintiffs'

19 | claims under the Consumer Protection Act should be dismissed because Plaintiffs cannot prove

20 | that they suffered any injury that was causally linked to Chase's conduct, and any Consumer

21 | Protection Act claim arising out of conduct that occurred prior to July 28, 2010 is barred by the

22 | statute of limitations, 4) Plaintiffs' claim for violation of the Washington Collection Agency Act

23 | should be dismissed against it because "mortgage banks and banks" like Chase are excluded

24 |

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 6

1  from its coverage and Plaintiffs fail to establish that Chase violated the Washington Collection

2  Agency Act; 5) Plaintiffs' claim under the Washington Consumer Loan Act should be dismissed

3  because national banks, like Chase, are exempt from its coverage under RCW 31.04.025; and 6)

4  there is no private right of action under the Washington Lending and Homeownership Act and so

5  Plaintiffs' claim should be dismissed.  *Id.*  Chase also moves for dismissal of the federal claims,

6  arguing that:  1) Plaintiffs' claim under RESPA fails because their letters of March 9, 2012 and

7  November 23, 2012 do not qualify as qualified written requests under the statute and Plaintiffs

8  fail to allege any damages as a result of Chase's alleged failure to respond, 2) Plaintiffs' TILA

9  claim is barred by the statute of limitations, and even if it wasn't, Plaintiffs point to no evidence

10 that Chase violated it or any damages they suffered as a result, and 3) Plaintiffs' ECOA claim

11 fails because Plaintiffs have not shown that they are members of a protected class or that they

12 were qualified for the credit for which they applied, and, further, the statute specifically exempts

13 applicants that are in default from coverage under the ECOA.  *Id.*

14         SPS also moves for summary dismissal of the claims asserted against it.  Dkts. 76 and 82.

15 It argues that all Plaintiffs state law claims that are based on SPS's reports to the consumer

16 reporting agencies are preempted by the Federal Credit Reporting Act, 15 U.S.C. § 1681, and so

17 should be dismissed.  Dkt. 76.  As to the merits of the claims, SPS argues that: 1) Plaintiffs'

18 claim for breach of the implied duty of good faith and fair dealing should be dismissed because

19 there is no evidence of a contract between SPS and Plaintiffs, 2) Plaintiffs' negligence and

20 wrongful foreclosure claims fail as a matter of law because SPS did not violate a duty owed

21 Plaintiffs and "wrongful foreclosure" is not available where no foreclosure sale took place; 3)

22 Plaintiffs' Consumer Protection Act claim should be dismissed because Plaintiffs can make no

23 showing that SPS violated the Act, 4) Plaintiffs' claim for violation of the Washington

24

1   Collection Agency Act should be dismissed because it is preempted and because Plaintiffs can

2   point to no evidence that SPS violated the Act, 5) Plaintiffs' claim under the Washington

3   Consumer Loan Act should be dismissed because Plaintiffs can point to no evidence that SPS

4   violated the statute, and 6) there is no private right of action under the Washington Lending and

5   Homeownership Act and so Plaintiffs' claim under that statute should be dismissed.  *Id*.  SPS

6   argues that Plaintiffs' three federal claims should be dismissed because:  1) there is no private

7   right of action for violation of  TILA Regulation X, so the TILA claim asserted against SPS

8   should be dismissed; 2) Plaintiffs claims under RESPA should be dismissed because SPS timely

9   responded to Plaintiffs' qualified written request, and there is no private right of action regarding

10  Plaintiffs' RESPA claims based on 12 U.S.C. § 2609 regarding the handling of the escrow

11  account; and 3) Plaintiffs' claim for violation of the ECOA should be dismissed because

12  Plaintiffs cannot show that SPS violated the Act, and have not even alleged any discrimination

13  by SPS.  *Id.*

14          Plaintiffs respond and argue that their state claims asserted against Chase are not

15  preempted.  Dkts. 79 and 83.  They argue that: 1) their claim for breach of the duty of good faith

16  and fair dealing should not be dismissed, referencing the modification mediation with Chase in

17  relation to paragraph 12 "Borrower Not Released; Forbearance by Lender Not a Waiver" and

18  paragraph 19 "Borrowers Right to Reinstate after Acceleration" of the Deed of Trust; 2) their

19  claim for negligence should not be dismissed because Chase violated its duty of care when it

20  accepted the loan applications and its duty to maximize net present value under their pooling and

21  servicing agreements under RCW 61.24.177; 3) Plaintiffs' claims under the Consumer Protection

22  Act should not be dismissed because Chase's conduct regarding the mediation caused them

23  damages, 4) Plaintiffs' claims under the Washington Collection Agency Act are not preempted,

24

1   SPS is a servicer, and there are issues of fact as to whether Chase was a bank or servicer;  5)

2   Plaintiffs' claims under the Washington Consumer Loan Act are not preempted, and 6) Chase

3   violated the Washington Lending Homeownership Act.  *Id.* Plaintiffs argue that their three

4   federal claims should not be dismissed because:  1) their RESPA claims against Chase should

5   not be dismissed because there are issues of fact as to whether their two letters were qualified

6   written requests and whether Plaintiffs were damaged as a result of Chase's failure to respond, 2)

7   SPS violated TILA Regulation X, and 3) Plaintiffs did not receive the required notices when

8   Chase denied their loan modifications, and so have a claim under the EOCA.  Dkt. 79.

9       **D.  ORGANIZATION**

10       This opinion will evaluate motions as they relate to Plaintiffs state law claims, addressing

11   first whether they are preempted by HOLA and then second whether they fail on some other

12   basis.  This opinion will then address the motions as to the federal claims.

13       **II.   <u>DISCUSSION</u>**

14   **A.  SUMMARY JUDGMENT STANDARD**

15       Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

16   file, and any affidavits show that there is no genuine issue as to any material fact and that the

17   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

18   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

19   showing on an essential element of a claim in the case on which the nonmoving party has the

20   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

21   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

22   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

23   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

24

1   metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

2   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

3   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*

4   *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

5   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

6        The determination of the existence of a material fact is often a close question. The court

7   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

8   e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

9   *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

10   of the nonmoving party only when the facts specifically attested by that party contradict facts

11   specifically attested by the moving party. The nonmoving party may not merely state that it will

12   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

13   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

14   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

15   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990)..

16   **B.  HOLA'S PREEMPTION OF STATE LAW CLAIMS AND THEIR MERITS**

17        Congress enacted HOLA "to charter savings associations under federal law, at a time when

18   record numbers of home loans were in default and a staggering number of state-chartered savings

19   associations were insolvent." *Silvas v. E\*Trade Mortgage Corp*., 514 F.3d 1001, 1004 (9th Cir.

20   2008). HOLA and its following agency regulations are a "radical and comprehensive response

21   to the inadequacies of the existing state system, and so pervasive as to leave no room for state

22   regulatory control." *Id*. (*internal citations omitted*). Accordingly, "the presumption against

23   preemption of state law is inapplicable." *Id*.

24

1    Under HOLA, Congress gave regulatory power to the Office of Thrift Supervision

2  ("OTS"). 12 U.S.C. § 1464.  OTS promulgated a preemption regulation in 12 C.F.R. § 560.2.

3  *Silvas*, at 1005.  The preemption regulation specifically preempts "state laws purporting to

4  impose requirements regarding," as is relevant here, the following:

5      (1) Licensing, registration, filings, or reports by creditors; . . .
        (4) The terms of credit, including amortization of loans and the deferral and
6      capitalization of interest and adjustments to the interest rate, balance, payments
       due, or term to maturity of the loan, including the circumstances under which a
7      loan may be called due and payable upon the passage of time or a specified event
       external to the loan;
8      (5) Loan-related fees, including without limitation, initial charges, late charges,
       prepayment penalties, servicing fees, and overlimit fees;
9      (6) Escrow accounts, impound accounts, and similar accounts;
       (7) Security property, including leaseholds;
10     (8) Access to and use of credit reports; . . .
       (10) Processing, origination, servicing, sale or purchase of, or investment or
11     participation in, mortgages;
       (11) Disbursements and repayments. . . .
12
13  12 C.F.R. § 560.2(b).  The regulations also list state laws that are not preempted "to the extent

14  that they only incidentally affect the lending operations of Federal savings associations or are

15  otherwise consistent with the purposes of paragraph (a) of this section:"

16     (1) Contract and commercial law;
       (2) Real property law; . . .
17     (4) Tort law;
       (5) Criminal law; and
18     (6) Any other law that OTS, upon review, finds:
            (i) Furthers a vital state interest; and
19          (ii) Either has only an incidental effect on lending operations or is not
            otherwise contrary to the purposes expressed in paragraph (a) of this
20          section.

21  12 C.F.R. § 560.2(c).  "In addition to the mandate in § 560.2(a) and (b), OTS has outlined a

22  proper analysis in evaluating whether a state law is preempted under the regulation." *Silvas*, at

23  1005.  It provides:

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 11

1     When analyzing the status of state laws under § 560.2, the first step will be to
2     determine whether the type of law in question is listed in paragraph (b). If so, the
    analysis will end there; the law is preempted. If the law is not covered by
3     paragraph (b), the next question is whether the law affects lending. If it does, then,
    in accordance with paragraph (a), the presumption arises that the law is
    preempted. This presumption can be reversed only if the law can clearly be shown
4     to fit within the confines of paragraph (c). For these purposes, paragraph (c) is
    intended to be interpreted narrowly. Any doubt should be resolved in favor of
5     preemption.

6 *Silvas*, at 1005 (*quoting* OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996)).

7     Plaintiffs make state claims against both defendants for:  1) the breach of the implied

8 duty of good faith and fair dealing, 2) negligence and wrongful foreclosure, 3) violation of the

9 Washington Consumer Protection Act, RCW 19.86, *et. seq.*, 4) violation of the Washington

10 Collection Agency Act, RCW 19.16.250, *et. seq.*, 5) violation of the Washington Consumer Loan

11 Act, RCW 31.04, *et. seq.*, and 6) violation of the Washington Lending and Homeownership Act,

12 RCW 19.144.080.

13     Each of Plaintiffs' state law claims will now be examined to determine whether any are

14 preempted and if they are not, Defendants remaining arguments will be examined.

15     1.  <u>Breach of the Implied Duty of Good Faith and Fair Dealing</u>

16     The nature of this claim, whether it is a contract claim or something else, is unclear from

17 the Third Amended Complaint.  Plaintiffs fail to identify the legal <u>claim</u> – not their basis for it

18 (the mediator's findings) in their Response and Rebuttal.

19     In Washington, "there is no 'free-floating' duty of good faith and fair dealing that is

20 unattached to an existing contract."  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d

21 171, 177, 94 P.3d 945, 949 (2004).  To the extent that Plaintiffs intend this as an independent

22 claim, it should be dismissed because Washington does not recognize such a claim.  *Id.*  To the

23 extent that this claim is subsumed in Plaintiffs' claim under the Washington Consumer

24

Protection Act, that claim is discussed below.  To the extent that the claim is based on a violation of a contractual duty, the claim is not preempted, but should be dismissed against both parties on the merits.

In regard to preemption, this claim is not expressly listed in § 560.2(b).  To the extent that it is intended as a contract claim, it is excluded as being preempted under § 560.2(c)(1), so long as it "only incidentally affect[s]" lending operations.  § 560.2(c).  If Plaintiff intends this claim as a contract claim, there is no showing that Washington's implied duty of good faith and fair dealing, which is imposed in every contract (*Badgett v. Sec. State Bank,* 116 Wash.2d 563 (1991)), affects the lending operations of the bank.  The duty is not preempted.

As to the merits of the claim, a covenant of good faith and fair dealing exists only in relation to performance of a specific contract obligation. *Johnson v. Yousoofian,* 84 Wash.App. 755, 762, 930 P.2d 921 (1996); *Badgett* at 570.  This duty does not require a party to accept a material change in the terms of its contract.  *Badgett*, at 569.

To the extent that Plaintiffs base this claim on a contract, this claim should be dismissed.  Plaintiffs have failed to identify a specific contract obligation that either Chase or SPS did not perform in good faith.  Plaintiffs do not point to any contract obligation of SPS.  As to Chase, Plaintiffs refer to two paragraphs of the Deed of Trust, and paragraph 12 "Borrower Not Released; Forbearance by Lender Not a Waiver" and paragraph 19 "Borrowers Right to Reinstate after Acceleration" but make no showing that either of these paragraphs are helpful to their case.  Paragraph 12 does not require or mandate that the lender modify the terms of the agreement, but only provides that certain acts (*e.g.* extension of time for payment, modification, acceptance of payments of third parties, or acceptance of partial payments) do not constitute a "waiver of or preclude the exercise of any right or remedy."  Plaintiffs make no showing that

Chase acted in bad faith in regard to this provision.  Paragraph 19 requires that the Plaintiffs

agree to "pay[] the Lender all sums which then would be due under this Security Instrument and

the Note if no acceleration had occurred," but does not require that the lender modify the loan.

Plaintiffs make no showing that Chase acted in bad faith in regard to this provision.  Plaintiffs

point to no evidence that they were prepared to reinstate the Deed of Trust. Plaintiff Johnson

testified that "I do not believe I would have had adequate resources, without going back and

reviewing the financials, to bring the loan current."  Dkt. 81-1. This claim should be dismissed

against both Defendants.

> 2.   <u>Negligence and Wrongful Foreclosure</u>

Plaintiffs clarify in their Response, that:

> The negligence claim is meant to redress injury as a result [sic] Chase's 70
> month long delay in reviewing the Plaintiffs' modification application.  Plaintiffs
> do not claim a violation of [Home Affordable Modification Program ("HAMP")],
> but claim that because of Chase's ongoing negligence and now SPS's negligent
> servicing of their loan, Plaintiffs were denied the full use of the benefits available
> to them under HAMP.

Dkt. 79, at 11.

As to preemption, a claim for negligence is not preempted under § 560.2(c)(4) so long as

it "only incidentally affect[s]" lending operations.  § 560.2(c).  However, Plaintiffs' claim for

negligence against Chase – that it took over 70 months to process their modification and that the

loan modification was improperly processed would "affect" lending operations.  Indeed, state

laws that "purport[] to impose requirements regarding . . . [loan] processing [or] origination" are

expressly preempted under § 560.2(b)(10).  Further, Plaintiffs' negligence claim against SPS

regarding negligent "servicing" of the loan is also preempted.  Section 560.2(b)(10) also

preempts state laws seeking to impose requirements on the servicing of loans.  Plaintiffs'

1  negligence claims are preempted even though Plaintiffs attempt to couch them as traditional tort

2  claims.  Even if these claims were not preempted, Plaintiffs claims should be dismissed.

3         "In order to prove actionable negligence, a plaintiff must establish the existence of a duty,

4  a breach thereof, a resulting injury, and proximate causation between the breach and the resulting

5  injury."  *Schooley v. Pinch's Deli Mkt., Inc*., 134 Wash. 2d 468, 474, 951 P.2d 749, 752 (1998).

6         Chase argues that it did not owe a duty of care to the Plaintiffs.  Plaintiff argues that

7  Chase violated a duty of care when it accepted the loan applications.  Dkt. 79.  Plaintiff cites

8  California law for this proposition.  Under Washington law, however, lenders do not owe a

9  fiduciary duty to borrowers because they conduct their transactions at arm's length.  *Tokarz v.*

10  *Frontier Fed. Sav. & Loan Assoc.,* 33 Wn. App. 456, 458-459 (1982); *see generally Klinger v.*

11  *Wells Fargo Bank, NA,* No. 3:10-CV-05546-RJB, 2010 WL 5138478, at *4 (W.D. Wash. Dec. 9,

12  2010)(Plaintiffs failed to established that Wells Fargo owed them a duty of care regarding their

13  mortgage).  Plaintiffs also argue that Chase violated its duty to maximize net present value under

14  their pooling and servicing agreements under RCW 61.24.177.  Dkt 79.  Plaintiffs fail to show

15  even that if Chase had a duty under RCW 61.24.177, that that duty was owed to them and not the

16  beneficiaries under the pooling serving agreements.  Plaintiffs have failed to show that Chase

17  owed them a duty of care.  This claim should be dismissed.

18         As to SPS, Plaintiffs have also failed to point to a duty of care that SPS violated.  Further,

19  Plaintiffs have not shown that they have suffered damages as a result of SPS's "breach."  Aside

20  from referencing SPS's "negligence," Plaintiffs have failed to meaningfully address SPS's

21  motion to dismiss the negligence claims against it.  Moreover, to the extent that Plaintiffs allege

22  SPS was negligent in its credit reporting activities, the claim is expressly preempted by 15

23  U.S.C. § 1681h(e), which provides: ". . . no consumer may bring any action or proceeding in the

24

nature of defamation, . . . or negligence with respect to the reporting of information . . . to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such customer."  There is no evidence that SPS acted with "malice" or a "willful intent to injure" the Plaintiffs.   The negligence claim against SPS should be dismissed.

Plaintiffs' claim for "wrongful foreclosure" under Washington's Deeds of Trust Act ("DTA"), RCW 61.24, *et seq*., should be dismissed.  "There is no actionable, independent cause of action for monetary damages under the DTA based on DTA violations absent a completed foreclosure sale." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 429 (2014).  No foreclosure sale took place here and the claim should be dismissed against both Defendants.

3.   Violation of the Washington Consumer Protection Act -  RCW 19.86

In regard to HOLA preemption, this claim is not expressly listed in 12 C.F.R. § 560.2(b). To the extent that this claim is a form of tort law, it is excluded from being preempted under § 560.2(c)(4), so long as it "only incidentally affect[s]" lending operations.  § 560.2(c).

To the extent that Plaintiffs' Consumer Protection Act claim is based on Chase's conduct regarding the foreclosure mediation, in particular, the "bait-and-switch" of offering something different at mediation then was in the final loan documents, the claim is not preempted by HOLA.  There is no showing that this claim "affects lending operations."  It does not address the actual rates or terms offered but merely addresses the failure of Chase to adhere to what it agreed to do.  Accordingly, to the extent that the claim is premised on the certification of bad faith after the mediation, it is not preempted.

The Washington Consumer Protection Act is codified in RCW 19.86.  In order to make a claim under the Washington Consumer Protection Act, Plaintiffs must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest;

(4) causes injury to the Plaintiffs' business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co,* 105 Wn.2d 778, 780 (1986).

As is relevant to Chase, the Washington legislature has determined that a bad faith certificate in a mediation establishes the first two elements of a Consumer Protection Act claim. RCW 61.24.135(2). There is no dispute that Chase's conduct complained of in regard to the mediation "impacts the public interest." Chase argues that Plaintiffs cannot show an injury or a causal connection between Plaintiffs' injuries and Chase's conduct. Dkt. 72.

"The CPA's requirement that injury be to business or property excludes personal injury, 'mental distress, embarrassment, and inconvenience.'" *Frias v. Asset Foreclosure Servs., Inc*., 181 Wash. 2d 412, 431 (2014) (*quoting Panag v. Farmers Ins. Co. of Wash*., 166 Wash.2d 27, 57 (2009)). Financial consequences of these types of personal injuries are also excluded. *Id.* The CPA addresses "injuries" rather than "damages," and so quantifiable monetary loss is not required. *Id.* (*citing Panag*, 166 Wash.2d at 58). "The injury element can be met even where the injury alleged is both minimal and temporary." *Id.* As is relevant here, "[w]here a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA." *Frias v. Asset Foreclosure Servs., Inc*., 181 Wash. 2d 412, 431-32, 334 P.3d 529, 538. (2014).

Here, Plaintiffs allege that they were denied the chance to obtain a reasonable loan modification because Chase refused to participate in mediation in good faith by changing the terms agreed upon after Plaintiffs made the three trial payments. Plaintiffs state that they were damaged in the form of "increased cost of the loan in terms of fees, interest, escrow advances, and the bloated unpaid principle" and because Mr. Johnson was unable to transition to higher paying work (Dkt. 67-19) and Ms. Urner had to take on extra work, and both had their credit

1   negatively impacted (Dkt. 67-20).  Plaintiffs have pointed to sufficient issues of fact as to

2   whether they were injured by Chase's conduct at the mediation.

3          SPS's motion to summary dismiss the Consumer Protection Act claim against it should

4   be granted.  Although Plaintiffs allege in their Third Amended Complaint that SPS violated the

5   Consumer Protection Act because of the "conflicting and error ridden statements," Plaintiffs do

6   not respond the SPS's evidence regarding the payments, their application and that no fees or

7   other penalties were assessed.  Further, Plaintiffs offer no evidence that they were in any manner

8   damaged by SPS's alleged violation.

9                   4.   Violation of the Washington Collection Agency Act - RCW 19.16.250

10         The Plaintiffs' claim here is unclear.  Plaintiffs' Complaint alleges that Chase violated the

11  Washington Collection Agency Act by "publishing a Notice of Default bereft of any accounting

12  for the numerous payments borrowers made" and by "attempting to collect the arrears, interest

13  amounts, and costs that the Defendants' own bad-faith delay prejudicially inflated." Dkt. 67.

14         To the extent this claim challenges or would impose requirements regarding how

15  Defendants determine the loan's "balance, payments due, or term to maturity of the loan,

16  including the circumstances under which a loan may be called due and payable upon the passage

17  of time or a specified event external to the loan" or "loan-related fees, including without

18  limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees,"

19  this Washington Collection Agency Act claim is preempted by § 560.2(a).  12 C.F.R. §

20  560.2(b)(4)-(5).

21         Further, this claim should be dismissed against Chase because the statute expressly

22  excludes "mortgage banks and banks" from its coverage.  RCW 19.16.100(5)(c).  Plaintiff

23  asserts that there are issues of fact as to this issue, but do not carry their burden to point to any.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 18

1  Additionally, Plaintiffs make no showing that the Notice of Default was deficient, or that Chase

2  should be held liable for the foreclosure trustee Quality Loan Service's issuance of the Notice of

3  Default. Chase's motion to dismiss this claim should be granted.

4         As to SPS, Plaintiffs Third Amended Complaint alleges that SPS violated the

5  Washington Collection Agency Act based on SPS "continued to negatively report Plaintiffs'

6  credit to credit bureaus, even while Plaintiffs were still trying to work out a loan modification;"

7  SPS "failed to remove its negative reporting in connection with Plaintiffs in the three months

8  since Plaintiffs signed the modification agreement;" and "is still reporting Plaintiff's delinquency

9  as 'Past due 180 days despite the January 7th loan modification bringing the loan current." Dkt.

10  67. The reports Plaintiffs rely upon, though, are dated November 9, 2014 (Dkt. 67-2) and April –

11  July of 2014 (Dkt. 67-10).

12         The Washington Collection Agency Act claim asserted against SPS should also be

13  dismissed. The Federal Credit Reporting Act specifically preempts state law claims related to

14  the "reporting of information . . . against any person who furnishes information to a consumer

15  reporting agency." 15 U.S.C. §1681h(e). Aside from failing to support their claim with any

16  factual proof, Plaintiffs' Washington Collection Agency Act claim against SPS is preempted and

17  should be dismissed.

18              5.  <u>Violation of the Washington Consumer Loan Act - RCW 31.04</u>

19         In regard to their claim for violation of the Washington Consumer Loan Act, Plaintiffs'

20  Third Amended Complaint alleges that:

21         Defendants Chase and SPS's actions servicing Plaintiffs' loan resulted in a total
           failure to comply with the CLA's protections. Defendant Chase failed to
22         adequately respond to Plaintiffs' loan modification requests, loan disputes, and
           loan management inquiries by failing to timely provide Plaintiffs with the
23         information and authority to answer questions and resolve issues.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 19

Dkt. 67.

As to Chase, the Washington Consumer Loan Act, by its express terms, does not apply to "[a]ny person doing business under and as permitted by, any law of this state or of the United States relating to banks, savings banks, trust companies. . ." Chase, as a bank, is exempt from the statute.  Plaintiff points to no evidence to the contrary.

Plaintiffs' claims for violation of the Washington Consumer Loan Act should be dismissed in regard to SPS.  Plaintiffs fail to make any allegations, much less point to any evidence that SPS violated the Washington Consumer Loan Act.

6.  Violation of the Washington Lending and Homeownership Act - RCW 19.144.080

Under the enforcement provisions of the Washington Lending and Homeownership Act RCW 19.144.120, the director or director's designee, may take actions "to enforce, investigate, or examine persons covered by this chapter."  Accordingly, there is no private right of action under the Washington Lending and Homeownership Act.  Plaintiffs do not respond to this argument.  The claim should be dismissed against both Defendants.

7.  Conclusion on State Law Claims

All Plaintiffs' state law claims should be dismissed except the Consumer Protection Act claim asserted against Chase for its bad faith in the mediation.

C.  **FEDERAL CLAIMS**

As to the federal claims, Plaintiffs' Third Amended Complaint alleges the Defendants violated RESPA, TILA, and ECOA.  Dkt. 67.

1.  RESPA

RESPA provides in pertinent part:

1

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605 (e)(1)(A).  A "Qualified Written Request" ("QWR") is defined as a written document including the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605 (e)(1)(B).  When a loan servicer receives a QWR, RESPA requires that:

> Action with respect to inquiry:  Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall
> > (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> > (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
> > > (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> > (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
> > > (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> > > (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605 (e)(2).

The Third Amended Complaint asserts that on March 7, 2012 and November 19, 2012,

Plaintiffs sent a letters to Chase, entitled "Qualified Written Request."  Dkt. 67.  These

documents are attached to the Third Amended Complaint.  Dkt. 67-6.  The March 7, 2012 letter

makes requests for 45 different sets of documents.  *Id.*  Included was requests for:

> 7. An accounting of all payments on this Promissory Note that went to each
> owner of the Promissory Note.
> 8... The amount of all payments on this Promissory Note that went to each owner
> and part owner of the Promissory Note.
> 9.· An accounting of payment history from borrower on the Promissory Note and
> the Deed of Trust, including who such payments went to, the breakdown of such
> payments as to the principal, interests, fees, costs and a detail of each and every
> credit and debit posted on relating to this Deed of Trust and Promissory Note. . .
> 17. A breakdown of the current escrow charge showing how it is calculated and
> the reasons for any increase.
> 18. A copy of any annual escrow statements and notices of a shortage, deficiency
> or surplus.

Dkt. 67-6.  Plaintiffs also attach another letter, also dated March 7, 2015 and addressed to Chase

which provides:

> This is a written request under the State of Washington RCW 31.04.290. I dispute
> the total amount owed according to my Monthly Billing Statement and request
> that you send me information about the fees, costs and escrow accounting on the
> above-referenced loan. In addition, there are serious concerns regarding the
> application of previous scheduled periodic payments made to you. . . .
>
> Specifically, I/We are requesting an itemization and copies of the following:
>
> 1.  A detailed accounting of My/Our account(s) associated with the above
> referenced loan including all funds paid and disbursed from -said account(s);
> 2.  A breakdown  of the current escrow charges showing how they are calculated
> and the reasons for any increase/decrease -since the inception of the loan and any
> internal code definitions if applicable;
> 3.  A copy of any annual escrow statements and notices -of any shortage,
> deficiency or surplus; sent to Me/Us since the inception of this loan;
> 4. An a accounting of any late fees charged, inspection fees, Administrative
> Fees/Costs, BPO's and the dates and the reason for each;
> 5. Amount necessary to reinstate My/Our loan if delinquent per your records;
> 6. The payoff amount plus the per diem interest rate good for 15 days from the
> date of your response;
> 7. Please immediately credit any misapplied schedule periodic payments to

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 22

1

2
My/Our account per 12 U.S.C. § 2605(i)(3) and or other Statutes, Laws, Acts,
Regulations . . .

3

4
Please acknowledge and answer this request as required by the Real Estate
Settlement Procedures Act, and in accordance with the required time frames for
the same.

5   Dkt. 67-6.  The November 19, 2012 letter, again states that it is a "qualified written request" and

6   specifically ask for:

7
1. A detailed accounting of My/Our account(s) associated with the above
referenced loan including all funds paid and disbursed from said account( s);

8   2. A breakdown of the current escrow charges showing how they are calculated
and the reasons for any increase/decrease since the inception of the loan and any

9   internal code definitions if applicable;
3. A copy of any annual escrow statements and notices of any shortage,

10   deficiency or surplus; sent to Me/Us since the inception of this loan;
4. An a accounting of any late fees charged, inspection fees, Administrative

11   Fees/Costs, BPO's and the dates and the reason for each;
5. Amount necessary to reinstate My/Our loan if delinquent per your records;

12   6. The payoff amount plus the per diem interest rate good for 15 days from the
date of your Response. . .

13
No response was sent to any of the above letters, and Plaintiffs continued to try and get a loan

14   modification.  *See Generally* Dkts. 67-19 and 67-20.

15
        Plaintiffs' RESPA claims asserted against Chase should not be dismissed.  At least, there

16   are issues of fact as to whether these letters constitute "qualified written requests" under RESPA.

17   Further, although Chase argues that Plaintiffs cannot show damages, Plaintiffs point out that the

18   long loan transaction history shows a "large number of "UNAPPLIED" payments and fees with

19   no explanation."  Dkt. 79.  There are at least issues of fact as to whether Plaintiffs were damaged

20   as a result of Chase's failure to respond.  Chase's motion to summarily dismiss the RESPA claim

21   asserted against it based on its failure to respond to Plaintiffs' March and November 2012 letters

22   should be denied.

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 23

1    In regard to SPS, Plaintiffs RESPA claim should be dismissed.  Plaintiffs fail to respond

2    to SPS's arguments that they did respond to Plaintiffs' qualified written request.  Plaintiffs failed

3    to respond to SPS's argument that there was no private right of action under RESPA for

4    violations of 12 U.S.C. § 2609.  SPS's motion to dismiss Plaintiffs' RESPA claim against it

5    should be granted.

6        2.  TILA

7    A claim for monetary damages under TILA "may be brought ... within one year from the

8    date of the occurrence of the violation." 15 U.S.C. § 1640(e). A TILA violation occurs at the

9    time the loan documents are signed. *See Meyer v. Ameriquest Mortgage Co*., 342 F.3d 899, 902

10   (9th Cir.2003); *see also Vatomanyuk v. Quality Loan Service Corp. of Washington*, 699

11   F.Supp.2d 1242, 1244 (W.D.Wash.2010).

12   Plaintiffs fail to respond to Chase's arguments that the TILA claim asserted against it

13   should be dismissed due to the statute of limitations, or that Chase did not violation TILA.

14   Plaintiff's claims against Chase for violation of TILA should be dismissed.

15   Plaintiffs argue in their response that SPS violated TILA's Regulation X.  Dkt. 79.

16   Regulation X of TILA provides:

17       No servicer shall fail to credit a periodic payment to the consumer's loan account
         as of the date of receipt, except when a delay in crediting does not result in any
18       charge to the consumer or in the reporting of negative information to a consumer
         reporting agency, or except as provided in paragraph (c)(1)(iii) of this section.
19

20   12 C.F.R. 226.36(c)(1)(i).  SPS moves for dismissal of this claim against it, arguing that there is

21   only a private right of action for violations of Part B of TILA, §§ 1631-1651, but not for

22   violations of Regulation X.  Dkt. 82 (*citing* 15 U.S.C. § 1640; *Kievman v. Fed. Nat'l Mortg.*

23   *Assoc.*, 901 F. Supp.2d 1348, 1353 (S.D Fla. 2012)(holding that there is no private right of action

24   under 12 C.F.R. 226.36(c)(1)(i), and Federal Register, Volume 78, Part III (Feb. 14, 2013)("The

1  Bureau and prudential regulators will be able to supervise servicers within their jurisdiction to

2  assure compliance with these requirements but there will not be a private right of action to

3  enforce these provisions)).  SPS argues that it is not a "creditor," as defined under TILA, and so

4  no relief may be had from it.  *Id.* (*citing* 15 U.S.C § 1602(g)).  SPS also points out that even if

5  there were a private right of action, and it were a "creditor" SPS has correctly applied all

6  Plaintiffs' surpluses, and did not impose any late fees or charges.  *Id.*

7       Plaintiffs fail to address SPS's argument that there is no private right of action for

8  violations of Regulation X.  Plaintiffs fail to address SPS's argument that it is not a "creditor"

9  under the Act.  Plaintiffs' TILA claim against SPS should be dismissed.

10       3.  ECOA

11       The ECOA was enacted to prohibit creditors from discriminating against applicants on

12  the basis of race, color, religion, national origin, sex, marital status, or age.  15 U.S.C. § 1691(a).

13  "In enacting and amending the ECOA, Congress recognized that a prohibition against

14  discrimination in credit provides a much-needed addition to the previously existing strict

15  prohibitions against discrimination in employment, housing, voting, education, and numerous

16  other areas." *Bros. v. First Leasing*, 724 F.2d 789, 794 (9th Cir. 1984).  Under the EOCA, a

17  creditor must provide a statement of reasons for an "adverse action" against an applicant.  15

18  U.S.C. § 1691(d).  An "adverse action" is defined as:  "a denial or revocation of credit, a change

19  in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the

20  amount or on substantially the same terms requested."  *Id*.  An "adverse action" excludes "a

21  refusal to extend additional credit under an existing credit arrangement where the applicant is

22  delinquent or otherwise in default, or where such additional credit would exceed a previously

23  established credit limit."  *Id.*

24

1    To make a claim under the ECOA, Plaintiffs must show:  1) they are members of a

2  protected class; (2) they applied for credit with defendants; (3) they qualified for credit; and (4)

3  they were denied credit despite being qualified.  *See Hafiz v. Greenpoint Mortgage Funding*,

4  Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).

5    Plaintiffs claim under the ECOA, asserted against both Defendants should be dismissed.

6  Plaintiffs have failed to show that they are members of a protected class.  Plaintiffs fail to show

7  that SPS denied them credit.  Plaintiffs failed to show that they were qualified for the credit for

8  which they applied with Chase.  Further, at the time Chase denied their various loan modification

9  applications, Plaintiffs were "delinquent or otherwise in default" so Chase's denials were not

10  considered "adverse actions" under the ECOA.  Plaintiffs have failed to point to any evidence to

11  support their claim under the ECOA against either Defendant and so the claim should be

12  dismissed.

13    4.  <u>Conclusion Regarding Plaintiffs' Federal Claims</u>

14  Plaintiffs' RESPA claim against Chase should not be dismissed.  Plaintiffs' remaining

15  federal claims should be dismissed.

16  **D.  REMAINING CLAIMS**

17  The remaining claims in this case are 1) Plaintiffs' Consumer Protection Act claim based in

18  Chase's bad faith conduct in the foreclosure mediation and 2) Chase's violation of RESPA

19  regarding Plaintiffs letters of March and November of 2012.  Chase's motion to dismiss the other

20  claims asserted against it should be granted.  SPS's motion to summarily dismiss all claims

21  asserted against it should be granted.

22

23

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 26

1

### III.   ORDER

2   Therefore, it is hereby **ORDERED** that:

3   - Defendant JP Morgan Chase Bank N.A.'s Motion for Summary Judgment (Dkt.

4   72) is:

5   o **DENIED** as to Plaintiffs' Consumer Protection Act claim and the RESPA

6   claim and

7   o **GRANTED** as to all remaining claims;

8   - Defendant Select Portfolio Servicing, Inc.'s Motion for Summary Judgment (Dkt.

9   76) is **GRANTED**; and

10   o All claims asserted against Defendant Select Portfolio Servicing, Inc. are

11   dismissed.

12   The Clerk is directed to send uncertified copies of this Order to all counsel of record and

13   to any party appearing *pro se* at said party's last known address.

14   Dated this 11th day of August, 2015.

15

16   ROBERT J. BRYAN

17   United States District Judge

18

19

20

21

22

23

24